NORMAN M. CLAPP, Secretary, Department of Transportation
You have requested my opinion whether the collection of motor carrier permit fees prescribed by sec. 194.04 (4), Stats., conforms to the requirements of the Interstate Commerce Act in49 U.S.C.A. sec. 302 (b) (2) and the regulations issued thereunder in Title 49 C.F.R. sec. 1023.33. *Page 207 
Common motor carriers are required by sec. 194.23, Stats., to obtain a certificate for their operations. Similarly, contract carriers are required by sec. 194.34, Stats., to obtain a license for their operations. Section 194.04, Stats., provides that the carrier must make application for the certificate or license to the Public Service Commission. A carrier doing an interstate business in this state and holding an authority from the Interstate Commerce Commission merely presents such ICC authority with its application and receives a certificate or license from the Public Service Commission. The filing fee for a certificate is $40, and for a license is $25. Such $40 fee will be reduced to $25 to the extent necessary to comply with the Interstate Commerce Commission regulation in Title 49 C.F.R. sec. 1023.13, which provides that such a fee may not exceed $25. Such carriers also pay permit fees as prescribed by sec. 194.04 (4), Stats. Common motor carriers pay $20 per vehicle per year. Contract motor carriers pay $10 per vehicle per year. Common motor carriers of property pay an additional $10 per vehicle per year. All of these fees are paid into the highway fund. Such carriers also pay registration fees for each vehicle as prescribed by ch. 341, Stats., except where exempt under reciprocity agreements.
Public Law 89-170, 49 U.S.C.A. sec. 302 (b) (2), authorizes the Interstate Commerce Commission to promulgate standards as to:
 ". . . forms and procedures required to evidence the lawfulness of interstate operations of a carrier within a State by (a) filing and maintaining current records of the certificates and permits issued by the Commission, (b) registering and identifying vehicles as operating under such certificates and permits, . . ."
Pursuant to this statute, the Interstate Commerce Commission has promulgated certain standards for the registration and identification of carriers in interstate commerce. Title 49 C.F.R. Part 1023. Section 1023.32 of such standards provides that the state shall issue an identification stamp or number and that these shall be used to identify vehicles operated by carriers to indicate that such carriers are authorized to operate within the state. Section 1023.33 of such standards provides that the state may charge the carrier not to exceed $5 for each vehicle operated. Until recently, that section further provided: *Page 208 
 ". . . The prescription of the maximum fee of $5 for the issuance of such identification stamp or number shall not preclude a State from imposing an additional fee in a reasonable amount to be paid to a State commission prior to the issuance of such stamp or number if such additional fee shall be used solely for defraying the cost of the regulation of carriers by highway operating within the borders of such State and the enforcement of laws pertaining thereto."
This part of the section has now been amended to read as follows:
 ". . . The prescription of the maximum fee of $5 for the issuance of such identification stamp or number shall not preclude a State from imposing an additional fee in a reasonable amount to be paid to a State commission prior to the issuance of such stamp or number if such additional fee shall be subject to exclusive use by the State commission
and used by it solely for defraying the cost of the regulation of carriers by highway operating within the borders of such State and the enforcement of laws pertaining thereto. The State commission shall maintain adequate records to identify the receipt and disbursement of such funds collected pursuant to the provisions of this section." (Italics indicate the language added by amendment.)
This amendment to the regulation was published in the Federal Register on November 27, 1973, in Vol. 38, p. 32580, and again on December 7, 1973, in Vol. 38, p. 33772.
Section 194.04 (1) (bd), Stats., provides that each holder of a certificate shall pay an annual permit fee for each vehicle operated under the certificate, and sec. 194.23 (1), Stats., provides that no person shall operate a vehicle as a common motor carrier except in accordance with his certificate, and except by virtue of a permit issued to him for the operation of such vehicle. Sections 194.04 (1) (cb) and 194.34 (1), Stats., make similar requirements as to contract carriers. Thus, it is clear that the permits so issued are for the purpose of registering and identifying such vehicles as being operated under the authority issued by the Interstate Commerce Commission and the Public Service Commission, and that such permits are subject to the regulations of the Interstate Commerce *Page 209 
Commission as provided in Public Law 89-170, 49 U.S.C.A. sec. 302
(b) (2).
Since the Wisconsin permit fees vary from $10 to $30, it is clear that they exceed the $5 maximum permitted by the federal regulation. In State ex rel. Sammons Trucking, Inc. v. Boedecker
(1972), 158 Mont. 397, 492 P.2d 919, the Montana Supreme Court struck down a similar $10 fee as being in conflict with the federal law which preempts this field and supersedes state law on the same subject to the extent that they are in conflict. In that case, there was no attempt to show that the $10 fee was, in fact, used solely for defraying the cost of the regulation of highway carriers and the enforcement of laws pertaining thereto as permitted by the federal regulations. However, Wisconsin spends, for regulation of motor carriers and law enforcement related thereto, substantially more than the total revenue derived from the permit fees charged. For example, for the fiscal year 1972-1973, total permit fees received were $715,244. During that year, the cost of operating the motor carrier section of the Public Service Commission was $594,387. Figures received from the Bureau of Enforcement of the Division of Motor Vehicles indicate they spend in excess of $1,500,000 per year for enforcement of motor carrier regulations alone. From this, it is clear that the Wisconsin fees are reasonable in amount and are, in fact, used solely for defraying the cost of motor carrier regulation. Thus, the $10 and $20 permit fees provided by sec. 194.04 (4) (a), (b), and (c), Stats., are clearly authorized by and not in conflict with federal regulations.
This leaves for consideration only sec. 194.04 (4) (d), Stats., which provides:
 "Motor vehicles operated by common motor carriers of property, $10. Such fees shall be remitted by the division to an association rate and tariff bureau designated by each carrier and shall be used by such bureau to publish the rates and tariffs of such carrier and to promote the efficient use of common motor carriers of property in this state."
These fees are collected by the Division of Motor Vehicles and remitted to a rate and tariff bureau designated by the carrier to be used for publishing tariffs. Regulated carriers are required to publish their rates and tariffs which are large, detailed documents consisting *Page 210 
of many pages. Carriers are permitted and encouraged to utilize tariff bureaus to publish such tariffs, which are then filed with the Interstate Commerce Commission and the Public Service Commission. They are available for use by carriers, shippers, receivers, and the general public.
Prior to the recent amendment of the Interstate Commerce Commission regulation in Title 49 C.F.R. sec. 1023.33, it could be argued that the $10 permit fee collected by the Division of Motor Vehicles and remitted to a rate and tariff bureau is reasonable in amount, and is, in fact, used solely for defraying the cost of motor carrier regulation. However, as set forth above, this regulation has now been amended to provide that such fee shall be "subject to exclusive use by the State commission and be used by it solely for defraying the cost of the regulation of carriers by highway." It is my opinion that the $10 permit fee remitted to the rate and tariff bureau is not subject to exclusive use by a state commission and is not used by it as is required by the regulation. It follows that the collection of this fee is in conflict with such federal regulation which, in this area of interstate commerce, preempts the field and supersedes the state regulation. It is, therefore, my opinion that such fee may not be collected from any carrier operating in interstate commerce.
RWW:AOH